IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUIS CRUZ, | ) | Case No. 1:18cv2834 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| KEITH FOLEY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Luis Cruz, an Ohio prison inmate serving an eight-year, mandatory sentence after pleading guilty to heroin trafficking and a firearm specification, petitions the court for a writ of habeas corpus under 28 U.S.C. § 2254, contending that the state courts violated his constitutional rights in in *State v. Cruz*, No. 604108-16-CR¸ Cuyahoga County Court of Common Pleas.  ECF Doc. 1.  Cruz is currently incarcerated[1] at the Grafton Correctional

---

[1] Offender search result as of May 8, 2020.  Nothing in the docket indicates that Cruz has provided the court with his current address.  It is the party, not the court, who bears the burden of apprising the court of any changes to his mailing address.  *See Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir. 2012) (citing *Casimir v. Sunrise Fin., Inc.*, 299 F. App'x 591, 593 (7th Cir. 2008) (affirming district court's denial of Rule 60(b) motion when movants claimed due to house fire they did not receive mail informing them of court's entry of summary judgment); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("[A] litigant who invokes the processes of the federal courts is responsible for maintaining communication with the court during the pendency of his lawsuit."); *Watsy v. Richards*, No. 86-1856, 816 F.2d 683, 1987 U.S. App. LEXIS 5169 at *3 (6th Cir. April 20, 1987) (affirming dismissal for failure to prosecute when appellant failed to provide district court with "current address necessary to enable communication with him").

Institution, in Grafton, Ohio where Keith Foley is warden and maintains custody of Cruz.[2]
The originally named warden, Brigham Sloan, opposed the petition in his answer and return of
writ. ECF Doc. 7. Cruz has filed a traverse in support. ECF Doc. 8. The matter is before me
by an automatic order of reference under Local Rule 72.2 for preparation of a report &
recommendation pursuant to Local Rule 72.1.

The court lacks subject matter jurisdiction over two of Cruz's three grounds for relief.
Further, Cruz's three grounds for relief raise only noncognizable and/or meritless claims. I
recommend that the Court DISMISS the claims and DENY Cruz's petition for writ of habeas
corpus.

## II.     State Court History

### A.     Trial Court and Direct Appeal Proceedings

On March 24, 2016 a Cuyahoga County, Ohio grand jury returned an indictment
charging Cruz with eight counts of criminal activity occurring on February 29, 2016, as
follows:

| Count | Charge | Rev. Code | Specification(s) |
|-------|--------|-----------|------------------|
| 1 | Trafficking in Heroin – F1 | 2925.03(A)(2) | Major Drug Offender; 1-yr. firearm; juvenile; property forfeiture |
| 2 | Drug Possession – F1 | 2925.11(A) | Major Drug Offender; 1-yr. firearm; property forfeiture |
| 3 | Drug Possession – F5 | 2925.11(A) | 1-yr. firearm; property forfeiture |
| 4 | Having Weapons Under Disability – F3 | 2923.12(A)(3) | Property forfeiture |
| 5 | Permitting Drug Abuse – F5 | 2925.13(B) | Property forfeiture |
| 6 | Possessing Criminal Tools – F5 | 2903.02(A) | Property forfeiture |
| 7 | Endangering Children – M1 | 2919.22(A) | None |
| 8 | Endangering Children – M1 | 2919.22(A) | None |

---

[2] Grafton Correctional Institution staff as of May 8, 2020. Because Cruz is now incarcerated at
Grafton Correctional Institution, Keith Foley, Warden has been substituted for the original respondent,
Brigham Sloan, Warden.

Cruz pleaded not guilty.  ECF Doc. 7-1 at 18.  He requested and was appointed new counsel after filing a bar complaint against his originally-assigned attorney.  ECF Doc. 7-1 at 266-276. On February 13, 2017 Cruz initiated a state-court habeas case in the Ohio Court of Appeals based on his contention that he should be released on bond pending trial.[3]  On March 8, 2017 the trial court denied Cruz's oral motion to be released on bond.  ECF Doc. 7-1 at 289-290.

The trial court heard and denied a motion to suppress evidence on May 8, 2017, the day trial was to begin.  ECF Doc. 7-1 at 316-326.  The state requested the dismissal of Count 5 prior to the start of trial.  ECF Doc. 7-1 at 327.  Cruz waived his right to a have a jury determine the Count 4 weapon under disability charge.  ECF Doc. 7-1 at 311-313.  Trial commenced and a jury was seated on May 8, 2017.

On May 9, 2017 before opening statements, Cruz and the state entered into a plea agreement.  ECF Doc. 7-1 at 481.  Cruz agreed to plead guilty to an amended heroin trafficking charge in Count 1 (under the amendment, the state agreed to reduce the amount of heroin involved in the allegation, thus reducing Cruz's prison exposure).  Cruz also agreed to plead guilty to the juvenile specification and the one-year firearm specification attached to Count 1.  And Cruz agreed to forfeit $22,889, eight cell phones and two vehicles.  ECF Doc. 7-1 at 483-496.  Under the plea agreement, all other charges and specifications were to be dismissed upon the motion of the prosecutor.  The trial court accepted Cruz's guilty plea as having been made "knowingly, voluntarily and with full understanding," and found Cruz guilty.  ECF Doc. 7-1 at 496.

---

[3] *See Cruz v. Pinckney*, Eighth Dist. Cuyahoga No. 105454, 2017-Ohio-4308, 2017 Ohio App. LEXIS 2365 (June 14, 2017).  Because Cruz raises no issue concerning the state court's handling of the issues raised in his state-habeas case, it is unnecessary to provide further information about the case here.

By agreement of the parties, the trial court proceeded directly to sentencing after accepting the guilty plea.  The court imposed the sentence recommended by the parties, ordering Cruz to serve a one-year mandatory prison term on the firearm specification consecutive to a mandatory seven-year prison term on the amended heroin trafficking charge in Count 1.  Cruz's aggregate prison sentence was eight years.  In addition, Cruz forfeited $22,889, eight cell phones and two vehicles.  He was ordered to pay a mandatory fine of $10,000.  He was informed his prison sentence would be followed by five years of mandatory postrelease control.  Pursuant to the plea agreement, the court granted the prosecutor's motion to dismiss the charges in Counts 2 – 7.  ECF Doc. 7-1 at 19; ECF Doc. 7-1 at 21.[4]

Cruz did not file a notice of appeal within the thirty-day time limit of Ohio App. R. 4(A)(1).  Had he desired to appeal the May 9, 2017 judgment, his notice of appeal was due on June 8, 2017; and even using the date of the *nunc pro tunc* entry filed June 27, 2017, his notice of appeal was due by July 27, 2017.  Cruz did, however, file a *pro se* notice of appeal and motion for leave to file delayed appeal on August 8, 2017.  ECF Doc. 7-1 at 23; ECF Doc. 7-1 at 32.  The Ohio Court of Appeals granted Cruz the right to pursue a delayed appeal and appointed counsel.  ECF Doc. 7-1 at 39.

Cruz, by his new attorney, filed a merit brief on December 4, 2017 in which he asserted three assignments of error:

1. The trial court erred when it found Appellant's plea was voluntary, knowing and intelligent and that he was aware of the maximum penalty involved where at the time of his change of pleas he was given  inaccurate information  about  his judicial release and received ineffective assistance of

---

[4] The trial court entered a second journal entry, *nunc pro tunc*, on June 27, 2017 to conform the judgment entry to what was stated in court on May 9, 2017: that Cruz's prison terms were mandatory sentences.  *See* ECF Doc. 7-1 at 498 where the prosecutor recommended an eight-year mandatory sentence and the trial judge stated, "I am going to impose the sentence recommended by the State and the Defense . . .."  Nevertheless, in court the trial judge then imposed an aggregate sentence without using the word "mandatory."

counsel in violation of the Sixth Amendment to the United States Constitution related to the incorrect information conveyed to Appellant regarding his eligibility to file for judicial release.

2. The trial court erred when it imposed a mandatory fine on indigent Appellant, without first considering his ability to pay and otherwise trial counsel was ineffective for failing to file an affidavit of indigency.

3. The trial court erred when it ordered Appellant to pay court costs in its journal entry of sentencing that were not imposed on the record and trial counsel was otherwise ineffective for failing to file an affidavit of indigency.

The state filed an appellee brief (ECF Doc. 7-1 at 62), and Cruz filed a reply brief.  ECF Doc. 7-1 at 80.  The Ohio Court of Appeals rejected Cruz's assignments of error and affirmed the trial court's judgment.  *State v. Cruz*, Eighth Dist. Cuyahoga No. 106098, 2018-Ohio-2052, 2018 Ohio App. LEXIS (May 24, 2018); ECF Doc. 7-1 at 91.

On June 4, 2018, Cruz, by his appellate counsel, filed an application for reconsideration of the Ohio Court of Appeals' ruling on Cruz's third assignment of error. ECF Doc. 7-1 at 106.  He also filed on that same date an application for reconsideration and rehearing *en banc* in regard to the appellate court ruling on Cruz's first assignment of error (ECF Doc. 7-1 at 111) and a motion to certify a conflict on that same issue (ECF Doc. 7-1 at 123).  On June 14, 2018, the state filed opposition briefs to each of Cruz's motions: (ECF Doc. 7-1 at 170, regarding the motion to reconsider the ruling on the third assignment of error), (ECF Doc. 7-1 at 174, regarding the motion for *en banc* rehearing), and (ECF Doc. 7-1 at 185, regarding the motion to certify a conflict).  The Ohio Court of Appeals summarily rejected Cruz's motions in journal entries filed on July 3 and 11, 2018.  ECF Doc. 7-1 at 193-195.

While awaiting rulings on his appeals court motions, Cruz filed a timely *pro se* notice of appeal and memorandum in support of jurisdiction with the Ohio Supreme Court

concerning the original May 28 court of appeals judgment.  ECF Doc. 7-1 at 199, 201.  Cruz's

jurisdictional memorandum asserted three propositions of law which were identical to his

court of appeals assignments of error.  ECF Doc. 7-1 at 202.  The state did not file a response.

On August 15, 2018, the Supreme Court of Ohio declined to accept jurisdiction of Cruz's

case.  ECF Doc. 7-1 at 234; *State v. Cruz*, 153 Ohio St.3d 1463, 2018-Ohio-3258, 2018 Ohio

LEXIS 2003.  Cruz did not appeal to the United States Supreme Court.

### III.    Federal Habeas Corpus Petition

On December 6, 2018, Cruz filed a timely[5] petition for writ of habeas corpus under 28

U.S.C. § 2254 in this court.[6]  Cruz has asserted the same three claims for relief he raised in the

Ohio courts:

> **GROUND ONE:** The trial court erred when it found Cruz's plea was
> voluntary, knowing, and intelligent and that he was aware of the maximum
> penalty involved where at the time of his change of plea, Cruz was given
> inaccurate information about his Judicial Release and received ineffective
> assistance of counsel in violation of the Sixth Amendment to the United States
> Constitution.
>
> **GROUND TWO:** The trial court erred when it imposed a mandatory fine on
> an indigent Cruz, without first considering his ability to pay pursuant to trial
> counsel being ineffective for failing to file an affidavit of indigency.
>
> **GROUND THREE:** Trial court erred when it ordered Cruz to pay court costs
> in its journal entry of sentencing that was not imposed on the record and trial
> counsel was ineffective for failing to file an affidavit of indigency.

ECF Doc. 1 at 5-7.  Cruz filed a contemporaneous memorandum in support of his petition.

ECF Doc. 1-1.  The respondent warden opposes Cruz's claims and urges the court to dismiss

---

[5] The warden asserts (ECF Doc. 7 at 7) and I concur that the petition was filed well within the one-year
limitations period of 28 U.S.C. 2244(d).
[6] Cruz stated under oath that the petition was placed in the prison mail system on December 6, 2018.
That is considered to be the date of filing under the prison mailbox rule, not the date of actual filing of
the petition by the clerk of court (December 10, 2018).  *Houston v. Lack*, 487 U.S. 266, 270 (1988).

the claims and deny the petition. ECF Doc. 7.  Cruz has filed a traverse essentially reasserting

the same arguments presented in his petition.  ECF Doc. 8.

## IV.  Law and Analysis

### A.  Applicable Law

#### 1.  Subject Matter Jurisdiction

Every court must determine whether it has subject matter jurisdiction over the claims

brought before it.  In federal habeas corpus cases the analysis is made clear by the language of

the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214

("AEDPA"), codified, in part, at 28 U.S.C. § 2254.  That statute requires:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
> entertain an application for a writ of habeas corpus in behalf of a person in
> custody pursuant to the judgment of a State court **only on the ground that he
> is in custody in violation of the Constitution or laws or treaties of the
> United States**.

28 U.S.C. § 2254(a) (emphasis added).  Any claim which does not directly challenge the state

court's right to keep the petitioner in custody cannot be considered by the federal habeas

court.  It is well settled that there is no habeas corpus jurisdiction to consider an argument that

the petitioner's rights were violated by state court orders relating to noncustodial issues such

as fines or restitution orders:

> Under § 2254, subject matter jurisdiction exists "only for claims that a person
> 'is in custody in violation of the Constitution or laws or treaties of the United
> States.'"  *Dickerson v. United States*, 530 U.S. 428, 439 n.3, 120 S. Ct. 2326,
> 147 L. Ed. 2d 405 (2000) (quoting 28 U.S.C. § 2254(a)).  In general, fines or
> restitution orders fall outside the scope of the federal habeas statute because
> they do not satisfy the "in custody" requirement of a cognizable habeas claim.
> *See United States v. Watroba*, 56 F.3d 28 (6th Cir. 1995) (holding that § 2255
> does not grant subject matter jurisdiction over restitution orders);  *Michaels v.
> Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012) (stating that a fine is not
> cognizable under § 2254 and citing *Watroba*, 56 F.3d at 29); * * * Further,
> "collateral relief from a noncustodial punishment, such as a fine or restitution
> order, is not made readily available to a defendant just because he happens at

that time to also be subject to custodial penalties."  Brian R. Means, Federal Habeas Manual § 1:21 (2012 ed.).

*Washington v. McQuiggin*, 529 F. App'x 766, 772 (6th Cir. 2013).  Challenges to state court orders imposing court costs are no different.  The *Washington* court further stated: "The district court should have dismissed that portion of Washington's petition for lack of subject matter jurisdiction. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)."  *Washington*¸ 529 F. App'x at 773.  Here, the warden asserts that we have no subject matter jurisdiction over Cruz's Ground Two and Ground Three claims because they merely challenge collateral matters and not Cruz's conviction.  ECF Doc. 7 at 8.  Cruz's traverse did not respond to this argument.

### 2.    AEDPA Standards for Merits Review

AEDPA established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

When the claim presented in a habeas corpus petition has been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that

determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

**B.     Facts**

We begin analysis of Cruz's petition with a recitation of the factual findings of the Ohio courts.  The Ohio Court of Appeals summarized the relevant facts as follows:

{¶ 3}   Cruz was charged with one count of drug trafficking in violation of R.C. 2925.03, with a major drug offender specification, a juvenile specification, a one-year firearm specification, and numerous forfeiture specifications for $22,889 in U.S. currency, eight cell phones, two automobiles, two firearms, and other items. The indictment also included charges for two counts of drug possession, having weapons while under disability, permitting drug abuse, possessing criminal tools, and two counts of child endangering.

{¶ 4}   After the commencement of trial, the parties reached a plea agreement and Cruz pleaded guilty to one count of trafficking in heroin in an amount exceeding 50 grams but less than 250 grams, in violation of R.C. 2925.03(A)(2), with the juvenile specification, the one-year firearm specification, and the forfeiture specifications. As amended, the trafficking charge no longer included the major drug offender specification, and the state dismissed the remaining seven charges. The parties also agreed to a mandatory eight-year prison sentence.

{¶ 5}   Before accepting Cruz's guilty plea, Cruz's trial counsel advised the court that he believed Cruz understood his rights but expressed concern regarding the possibility of judicial release. In this regard, Cruz's trial counsel explained:

> He has expressed one concern. I told him we had talked to the Court on the sidebar and told him that when he feels that he wants to do so, he can file his — a motion with Court and I've talked about a motion for shock probation with judicial release. I've explained to him that if a motion is filed, like all motions, the Court will consider or review the motion, consider the motions and make a decision based on what the Court feels is most appropriate. That was the only thing that he mentioned to me that he was concerned about and I told him that's the conversation we had and, you know, the Court — I'm letting him again know what we're talking about. But it's my understanding he does wish to enter the plea that we talked about.

(Tr. 236-237.)

10

{¶ 6}   Thereafter, the court advised Cruz of the constitutional and statutory rights he was waiving by virtue of his guilty plea. The court also explained the nature of the charges and the potential penalties he could receive including a minimum, mandatory $10,000 fine. Despite expressing concern over how he was going to pay the mandatory fine, Cruz pleaded guilty to the single count of drug trafficking, as amended. The trial court reluctantly sentenced Cruz to the agreed eight-year sentence and ordered him to pay the mandatory fine of $10,000. Cruz now appeals his convictions and sentence.

*State v. Cruz*, Eighth Dist. Cuyahoga No. 106908, 2018-Ohio-2052, 2018 Ohio App. LEXIS 2222 (May 24, 2918).  ECF Doc. 7-1 at 93-95.  These state court factual findings are presumed correct unless Cruz rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760 (6th Cir. 2013).

### C.    Ground One

#### 1.    Parties' Arguments

Cruz's Ground One claim is predicated on his factual contention that he agreed to plead guilty on the assumption that he would be eligible to file a motion for judicial release at some point during his prison sentence.  He claims he was given incorrect legal advice about his right to seek judicial release and would not have pleaded guilty had he known he was required to serve his entire eight-year sentence.  As a result, he claims his plea was not knowing, intelligent or voluntary.  And he claims his Sixth Amendment rights were violated because he received ineffective assistance of counsel.  Cruz's argument focuses upon his counsel's statement – quoted above at ¶ 5 of the Ohio Court of Appeals opinion – in which counsel's faulty advice about judicial release is set forth.

In response, the warden asserts that people who plead guilty but later seek habeas relief may raise only one issue: a claim that the plea was not knowing and voluntary.  ECF Doc. 7 at 14.  The warden argues that the record shows that Cruz's plea was knowing and voluntary.  And he argues that because the Ohio Court of Appeals ruled on this claim on the merits our

court must give deference to the court of appeals conclusion unless it was contrary to or an unreasonable application of clearly established federal law.  ECF Doc. 7 at 21.

### 2. Analysis

Cruz is attempting to attack the validity of his guilty plea.  "Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted).  This is so because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  "Thus, after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself."  *Werth v. Bell,* 692 F.3d 486 (6th Cir. 2012).  "[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'"  *Ruelas v. Wolfenbarger,* 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  The validity of the plea must be determined from the "totality of the circumstances."  *Abdus-Samad v. Bell,* 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady,* 397 U.S. 747).

When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding."  *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993).  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge*

*v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L. Ed. 2d 136 (1977).  The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent.  *Garcia*, 991 F.2d at 326-327; see U.S.C. § 2254 (e)(1).  Under *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), and *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir. 1989), the petitioner must overcome a heavy burden if a federal habeas court is to overturn a state court finding that he made a knowing and voluntary plea.

The warden has filed the transcript of Cruz's plea colloquy.  ECF Doc. 7-1 at 481-501. The trial court found Cruz's plea to have been entered "knowingly, voluntarily, and with full understanding of [his] rights."  ECF Doc. 7-1 at 496.  This finding is accorded a presumption of correctness unless the record is inadequate to show the plea was voluntary and intelligent. Moreover, under AEDPA, the issue for this court in determining Cruz's habeas claim is to determine whether the rulings of the Ohio courts were contrary to or represented unreasonable applications of clearly established federal law, represented by holdings of the United States Supreme Court.  And even if the Ohio courts made erroneous rulings, we may not grant habeas relief unless the Ohio court rulings were not only erroneous but also unreasonable. *Schriro*, 550 U.S. at 473.

Here, there are two Ohio court rulings under review: (i) the determination by the trial court that Cruz entered his plea knowingly, voluntarily and will full understanding of his rights, and (ii) the determination by the Ohio Court of Appeals rejecting Cruz's claim that the trial court violated his rights in so finding.

The Ohio Court of Appeals directly confronted Cruz's Ground One claim:

{¶ 7}  In the first assignment of error, Cruz argues he did not enter his guilty plea knowingly, intelligently, and voluntarily because he received erroneous

13

information about his eligibility to file for judicial release. He contends he was falsely led to believe he could request judicial release when in reality the mandatory nature of his sentence made him ineligible for judicial release.

{¶ 8}   In considering whether a plea was entered knowingly, intelligently, and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7.

{¶ 9}   Crim.R. 11(C) provides that a trial court must inform a defendant of certain constitutional and nonconstitutional rights before accepting a felony plea of guilty or no contest. The purpose of Crim.R. 11(C) is to convey relevant information to the defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 10}  Under Crim.R. 11(C), prior to accepting a guilty plea in a felony case, the trial court must conduct an oral dialogue with the defendant to ensure (1) that the plea is voluntary, with the understanding of the nature of the charges and the maximum penalty involved and, if applicable, that the defendant is not eligible for community control sanctions; (2) that the defendant understands the effect of his or her plea; and (3) that the defendant understands the constitutional rights he or she waives by pleading guilty, including the rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself. Crim.R. 11(C)(2)(a)-(c); *see, e.g., State v. Hussing*, 8th Dist. Cuyahoga No. 97972, 2012-Ohio-4938, ¶ 18.

{¶ 11}  Strict compliance by the trial court is required for the waiver of the constitutional rights set forth under Crim.R. 11(C)(2)(c). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, *¶ 18*. When the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), it is presumed the plea was entered involuntarily and is therefore invalid. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, *¶ 31*.

{¶ 12}  With respect to the nonconstitutional rights described in Crim.R. 11(C)(2)(a), such as the right to be informed of the maximum penalty involved, substantial compliance with the rule is generally sufficient. *Veney* at ¶ 14, citing *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), citing *Stewart at*

14

92-93. "[A] slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving.'" *Clark* at ¶ 31, quoting *Nero* at 108.

{¶ 13} Furthermore, a trial court's failure to properly advise a defendant of his nonconstitutional rights will not invalidate a plea unless the defendant demonstrates prejudice. *Nero* at 108. The test for prejudice is whether the plea would have otherwise been made. *Id.*

{¶ 14} It is undisputed that the trial court strictly complied with the requirements of Crim.R. 11(C)(2)(c), and that Cruz understood the waiver of his constitutional rights. He contends he was misinformed and led to believe that he could request judicial release because his trial counsel told him that he could file a motion for shock probation. However, the trial court explained Cruz's penalty as follows:

THE COURT: Okay. You'll be pleading guilty to trafficking in drugs, and it's heroin, in an amount equal to or exceeding 50 grams but less than 250 grams and that's in violation of 2925.03(A)(2). As amended, it's a felony of the first degree, it carries anywhere from 3 to 11 years for the offense itself, plus you must serve a one-year mandatory time for the gun and that has to be served first and then you'll serve whatever time I give you on the offense itself; do you understand that sir?

THE DEFENDANT: Yes.

THE COURT: Now, your lawyers and the State's lawyer have recommended to me that you receive an aggregate sentence of eight years; do you understand that?

THE DEFENDANT: Yes.

THE COURT: I may agree with them, I may not, I have to make my own independent decision; do you understand that?

THE DEFENDANT: Okay.

THE COURT: Now, you also are going to be fined at least $10,000 but it could be as much as $20,000; do you understand that?

THE DEFENDANT: Where am I going to get that money from?

THE COURT: Frankly, that's not my concern.

THE DEFENDANT: I don't have any money.

(Thereupon, an attorney/client discussion took place off the record at this time.)

[DEFENSE COUNSEL]: We're ready to continue, Judge.

THE COURT: So, sir, you understand that it's a mandatory $10,000 fine; is that correct?

THE DEFENDANT: Yes.

15

THE COURT: All right. But it could be as much as $20,000; do you understand that[?]

THE DEFENDANT: Yes.

(Tr. 241-243.) The state also listed all the property Cruz would forfeit as a result of his guilty plea, and Cruz indicated that he understood that he was forfeiting those items. Thus, the trial court explained the potential penalties Cruz could receive by virtue of his guilty plea as required by Crim.R. 11(C)(2)(a).

{¶ 15} Moreover, Cruz understood that his conviction required a prison term of 3 to 11 years in addition to the mandatory one-year prison term on his firearm specification. Therefore, under the totality of the circumstances, we may conclude that Cruz understood that he was not eligible for probation and that he was going to prison. Cruz also understood that he was subject to a mandatory fine of $10,000 and a possible fine of up to $20,000. Therefore, regardless of his hope for judicial release, Cruz was notified and understood the potential penalties associated with his plea. This is all that Crim.R. 11(C)(2)(a) requires.

{¶ 16} Additionally, neither Cruz's trial counsel, the state, nor the court promised Cruz that he would be released on shock probation. His counsel advised him that even if he were to file a motion for judicial release, the court would determine whether judicial release was appropriate or not. There was no guarantee. Therefore, even though Cruz's trial counsel offered wrong advice regarding the potential for judicial release, Cruz understood that he was going to prison and that his maximum prison term could be 12 years (11 years for drug trafficking plus one year on the firearm specification).

{¶ 17} Moreover, Cruz fails to demonstrate that he was prejudiced by counsel's faulty advice. By pleading guilty, the state dismissed seven felony charges and deleted the major drug offender specification attendant to the drug trafficking charge to which Cruz pleaded guilty. The major drug offender specification alone carried a mandatory 11-year prison term. *See* R.C. 2925.03(C)(1)(f) (For major drug offenders, the court "shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree."). Indeed, Cruz faced up to 28 years in prison if he were convicted of all the charges in the indictment. The reduction in prison time was the incentive for pleading guilty, not the vague possibility of judicial release. Cruz fails to demonstrate that but for his trial counsel's statements regarding judicial release, he would not have pleaded guilty.

{¶ 18} Cruz nevertheless asserts that his trial counsel was ineffective because he conveyed false information regarding judicial release. To establish a claim for ineffective assistance of counsel, Cruz must show that his trial counsel's performance was deficient and that the deficient performance prejudiced his

16

defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the defendant must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland at 694*.

{¶ 19} As previously explained, Cruz cannot demonstrate that he was prejudiced by trial counsel's statements regarding judicial release. Therefore, he cannot establish a claim for ineffective assistance of counsel.

{¶ 20} The first assignment of error is overruled.

*State v. Cruz*, 2018-Ohio-2052 at ¶¶ 7-20; ECF Doc. 7-1 at 95-101.

We can see from the foregoing that the Ohio Court of Appeals concluded that Cruz was informed that he was going to prison and understood that he could be incarcerated for up to 12 years (*Id.* at ¶ 15).  Thus, the court found Cruz was informed of the maximum incarceration penalty he faced (*Id.* at ¶ 16).  The court also found that nowhere in the record was Cruz promised That he would be granted judicial release (*Id.*).

Initially, I note Cruz did not assert to the Ohio Court of Appeals that the trial court failed to strictly comply with the Ohio R. Crim. P. 11(C) requirement that he be advised of the constitutional rights he would surrender by pleading guilty.  Instead, he focused on the alleged violation of Ohio R. Crim. P. 11(C)(2)(a) and the nonconstitutional right to be informed of the maximum penalties he faced if he pleaded guilty.  Likewise, Cruz's habeas petition asserts that the trial court failed to inform him of the maximum penalties he could face if convicted. *See* ECF Doc. 1-1 at 7.

This argument actually does not make sense.  Cruz was plainly told that he could be required to serve up to 12 years in prison under the plea agreement.  Prison time is the penalty. Being *released* from prison is not a penalty at all, let alone a part of a "maximum penalty." Cruz did not contend in the Ohio Court of Appeals that he was promised judicial release and

he does not contend that here.  And the Ohio Court of Appeals rejected Cruz's Ground One claim partially on this basis when it concluded the trial court informed Cruz of the maximum penalty and made no promise of judicial release.  The trial court record backs up this finding.

Despite this, Cruz asserts that "his trial counsel, the prosecutor and the trial court informed him he was pleading to charges that carried a nonmandatory sentence and that we would be eligible for judicial release." ECF Doc. 8 at 4.  Cruz also asserts, "Clearly from the aforementioned record, defense counsel, prosecutor, and trial court without question informed Petitioner Cruz that he would be eligible for Judicial Release and more importantly that the court would consider the Motions for Judicial Release once it was filed." ECF Doc. 8 at 6. The record does not support Cruz's factual contentions.  At no point did the trial judge or prosecutor state Cruz would be eligible for judicial release.  Rather, the record shows that Cruz was told five times that his prison time would be mandatory time: twice before Cruz's lawyer said Cruz had "one concern" about his ability to seek judicial release and three times after:

> PROSECUTOR: And, Your Honor, part and parcel to this amendment and plea agreement is that . . . there will be a recommended mandatory – eight-year mandatory term of incarceration with this case

ECF Doc. 7-1 at 484.

> PROSECUTOR: But it is the State's understanding, Your Honor, the defendant is going to withdraw his previously entered plea of not guilty and enter a plea of guilty to the amended Count 1 with forfeitures and the agreement that there will be a recommended eight-year mandatory term of incarceration.

ECF Doc. 7-1 at 485.

> DEFENSE COUNSEL: The statements by the prosecutor are correct.  Again, for the record, I've had conversations with my client, we've had conversations with Mr. Cruz, I believe he understands what his rights are.  He has expressed one concern. I told him we had talked to the Court on sidebar and told him that when he feels that he wants to do so, he can file his -- a motion with this Court and I talked about a motion for shock

probation with judicial release. I have explained to him that if a motion is filed, like all motions, the Court will consider or review the motion, consider the motions and make a decision based on what the Court feels is most appropriate. That was the only thing that he mentioned to me that he was concerned about and I told him that's the conversation we had and, you know, the Court – I'm letting him again know what we're talking about. But it's my understanding he does wish to enter the plea that we talked about.

ECF Doc. 7-1 at 485.

THE COURT: Okay.  You'll be pleading guilty to trafficking in drugs, and it's heroin. . ..  As amended, it's a felony of the first degree, and it carries anywhere from 3 to 11 years for the offense itself, plus you must serve a one-year mandatory time for the gun that has to be served first and then you'll serve whatever time I give for the offense itself; do you understand that, sir?

THE DEFENDANT: Yes.

ECF Doc. 7-1 at 490-491.

PROSECUTOR: [during sentencing hearing] Your Honor, I would like to point out, I know you went through your -- you mentioned that the gun, firearm specifications was mandatory in nature.  All 1 -- felony one is also mandatory 3 to 11 years.

THE COURT: Okay.  So the gun time is mandatory and whatever number I give you will be a mandatory amount of time, do you understand that?  Do you understand that, Mr. Cruz?

THE DEFENDANT: Yes.

ECF Doc. 7-1 at 493-494.

DEFENSE COUNSEL: [during sentencing hearing] . . . My client does have family members back here in the court.  They're asking the Court to follow the agreed recommended sentence from the State and the Defense Counsel.

ECF Doc. 7-1 at 497.

PROSECUTOR: [during sentencing hearing] Your Honor, the State would ask the Court to follow the recommended eight-year mandatory term.

THE COURT: [imposing sentence] . . . I'm going to impose the sentence recommended by the State and the Defense reluctantly.

ECF Doc. 7-1 at 498.  And certainly, the trial judge, prosecutor and defense counsel never guaranteed that Cruz would receive judicial release.

The Ohio Court of Appeals applied the correct Supreme Court standard when it invoked the test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) to decide Cruz's Ground One claim.  Under clearly established federal law, the habeas petitioner seeking to establish ineffective assistance of counsel "must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688); accord *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012).  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).  Petitioner bears the burden of showing that counsel made errors "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Richter*, 562 U.S. at 104 (internal quotation marks omitted).

Gross misadvice by concerning parole eligibility can amount to ineffective assistance of counsel.  *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988).  In *Sparks*, defense counsel advised a murder defendant to plead guilty to avoid a sentence of life without the possibility of parole.  Under Kentucky law, however, no such sentence existed; and the Sixth Circuit concluded such gross misadvice satisfied the first *Strickland* prong because it fell short of the range of competence demanded of attorneys in criminal cases.  *Id.*  For purposes of our analysis, there is little difference between parole eligibility and eligibility for judicial release: each has to do with a prisoner's ability to leave prison before the end of the stated prison term. Here, there is no dispute that to the extent counsel told Cruz he might be eligible for judicial

release, that advice was wrong.  The Ohio Court of Appeals seems to have found Cruz could satisfy the first *Strickland* prong, because it never analyzed that prong and proceeded directly to an evaluation whether Cruz could satisfy *Strickland's* prejudice prong.

To establish prejudice under *Strickland*, the habeas petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Cooper*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694.  One challenging the voluntariness of a guilty plea must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  *Cooper*, 566 U.S. at 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

This case is much like *Hill*.  There, the petitioner pleaded guilty to crimes that led the trial court to impose a 35-year prison sentence.  Hill was mistakenly advised by both his counsel and the trial judge that he would be parole eligible after serving one-third of his sentence.  This was wrong because Hill was actually required to serve one-half of his sentence as a result of a prior conviction.  *Hill*, 474 U.S. at 55. The Supreme Court declined to decide whether there may be circumstances under which counsel's erroneous advice about parole eligibility might constitute constitutionally ineffective assistance of counsel, because Hill's habeas petition did not allege that but for counsel's mistaken advice, he would not have pleaded guilty and insisted on going to trial.  In contrast, Cruz has contended he would not have entered his guilty plea had he not been misinformed about his right to seek judicial release.  ECF Doc. 1-1 at 12.

21

Does merely reciting the statement that the petitioner would not have pleaded guilty but for counsel's mistaken advice satisfy the *Strickland* prejudice requirement?  *Hill* suggests not.  The Supreme Court affirmed the denial of habeas relief after noting that Hill had:

> [A]lleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

474 U.S. at 60.  Although Cruz has asserted that he would not have pleaded guilty had he known he would not be eligible for judicial release, he, like the petitioner in *Hill*, has alleged no special circumstances to support the conclusion that he placed particular emphasis on judicial release in deciding whether or not to plead guilty.  The only fact suggesting Cruz was considering the issue of judicial release at the time of his plea was his counsel's statement that Cruz had "one concern" about being able to apply for judicial release.  As with the petitioner in *Hill*, Cruz's consideration of the availability of judicial release would seem to have affected not only Cruz's analysis of the time he might be required to serve if sentenced pursuant to the proposed plea agreement but also his calculation of the time he would likely serve if he went to trial and was convicted.  Cruz has offered no new evidence to show that the mere possibility of early release somehow was a key issue in his decision to plead guilty.

"A mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice."  *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990); *accord Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986).  In *Keaton v. Marshall*, No. 95-55873, 1997 U.S. App. LEXIS 282 (9th Cir. January 6, 1997) the Ninth Circuit evaluated a case very similar to

22

Cruz's in which the habeas petitioner alleged he would not have pleaded guilty to murder but for counsel's erroneous advice about the year in which he would become parole eligible. Even though counsel's advice was mistaken, the court found the petitioner had not made an adequate showing of prejudice because he:

> made no specific allegation as to why he placed particular emphasis on the approximate date of his parole eligibility in making his plea decision. Moreover, he has not adequately explained why he would risk a possible sentence of life imprisonment without possibility of parole if he had been advised that from the date of sentencing he would be eligible for parole after serving almost 14 years, instead of 10.

*Id.* at *11. Here, Cruz has offered no explanation as to why he would risk a possible prison sentence of up to 28 years if he had been advised that he would be required to serve an eight-year mandatory sentence with no possibility of early release. And Cruz has offered nothing suggesting his admission of guilt at the time of his plea was not well-founded.

The Ohio Court of Appeals found that Cruz had not satisfied the *Strickland* prejudice prong. *State v. Cruz*, 2018-Ohio-2052 at ¶ 17; ECF Doc. 7-1 at 100. In doing so, the court focused on the aspects of the plea agreement that were especially beneficial to Cruz, including the dismissal of the major drug offender specification which alone could have required Cruz to be sentenced to a mandatory term of eleven years, part of a possible exposure of up to twenty-eight years in prison. The court made the factual finding that "[t]he reduction in prison time was the incentive for pleading guilty, not the vague possibility of judicial release." *Id.*

The Ohio Court of Appeals identified and applied *Strickland* in evaluating Cruz's Ground One claim for ineffective assistance of counsel. Because the state court used the correct rule of law, and because the state court did not decide a case differently than the Supreme Court on a set of materially indistinguishable facts, federal habeas relief is not

available to Cruz under the "contrary to" clause of § 2254(d)(1).  See *Williams*, 529 U.S. at 405-06.  For this court to issue the writ, then, Cruz must be entitled to relief under either (1) the "unreasonable application" clause of § 2254(d)(1), or (2) under § 2254(d)(2).  A federal habeas court may grant relief under the "unreasonable application" clause of § 2254(d)(1) if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 407-08.  The court may grant relief under § 2254(d)(2) if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003).  The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

The issue for this court on Cruz's Ground One claim is whether decision of the Ohio Court of Appeals[7] was not only incorrect but also unreasonable.  I cannot draw either conclusion.  Given the totality of the circumstances reflected in Cruz's plea and sentencing hearing, jurists of reason could conclude, as the Ohio Court of Appeals did, that Cruz was more motivated to plead guilty by the chance to cut at least three years and as many as twenty years off of his potential prison sentence than he was about making an application for discretionary judicial release.  Further, Cruz expressed his desire that his "woman" would receive drug treatment, presumably in lieu of prison time. ECF Doc. 7-1 at 497.  This implies that he decided to plead guilty, in part, to secure a more favorable outcome for his co-

---

[7] Habeas courts review the "last explained state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).

defendant. Fairminded jurists could disagree about what was most important to Cruz at the time he entered his plea, but Cruz has not rebutted the Ohio Court of Appeals conclusion that other issues were more important to Cruz than the possibility of being granted judicial release. Cruz has neither rebutted the presumption of correctness attached to that factual determination nor identified any clear factual error by the Ohio courts. Cruz has not shown that the Ohio Court of Appeals made an unreasonable determination of the facts in light of the evidence presented. I conclude, however, that fairminded jurists could disagree about the Ohio Court of Appeals conclusion that Cruz failed to demonstrate *Strickland* prejudice. *Yarborough v. Alvarado*, 541 U.S. at 664, bars the habeas court from granting relief when it makes such a finding. I further conclude that Cruz should be granted a certificate of appealability on this issue.

Cruz requests an evidentiary hearing but doesn't really indicate why. ECF Doc. 1-1 at 19; ECF Doc. 8 at 15. Presumably, it would be to allow him to provide evidence to support his argument that the possibility of judicial release was the most important issue to him. As noted above, the state court record is quite bare on this point.

AEDPA governs the request for a hearing. 28 U.S.C. § 2254(e)(2) provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The statute forbids a hearing under the circumstances.  Cruz is not relying on any new rule of constitutional law, and he has not asserted that he wishes to present evidence that was unavailable to him when the case was pending in state court.  And this is not a situation in which Cruz seeks to show that a jury would find him not guilty of the crime to which he pleaded guilty.  Thus, the statute itself bars a hearing.  The Supreme Court has enforced this rule.  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  I conclude Cruz is not entitled to a hearing on his Ground One claim.[8]

I recommend that Cruz's Ground One claim be dismissed on the merits.

### D.    Grounds Two and Three

#### 1.    Lack of Subject Matter Jurisdiction

Cruz's Ground Two claim challenges the state courts' imposition of a mandatory $10,000 fine without a determination of his ability to pay.  Cruz's Ground Three claim asserts that the trial court unlawfully ordered him to pay court costs in its sentencing entry because costs were never imposed at the sentencing hearing.  Cruz has overlaid upon each of these claims a contention that his trial counsel was ineffective because ne never filed an affidavit of indigency on Cruz's behalf.  He alleges the trial court would have had to waive both the mandatory fine and court costs had an affidavit of indigency been on file.

We lack subject matter jurisdiction to consider Cruz's Ground Two and Ground Three claims.  As discussed in Section VI(A)(1), p. 7 above, federal habeas courts have no

---

[8] A case discussed above, *Sparks v. Sowders*, 852 F.2d 882 (6th Cir. 1988), could be argued to support Cruz's request for a hearing, inasmuch as the Sixth Circuit reversed and remanded the trial court's decision to deny an evidentiary hearing in a case much like this one.  I conclude *Sparks*, having been decided before the highly deferential standards of AEDPA were enacted, no longer controls.  When, as here, AEDPA bars the request for an evidentiary hearing, this court would abuse its discretion to allow a hearing under the authority of *Sparks*.

jurisdiction to rule on any claim that does not directly attack a petitioner's conviction and which, if granted, would not result in his release. As the Sixth Circuit held in *Washington v. McQuiggin*, 529 F. App'x 766, 772 (6th Cir. 2013): "Under § 2254, subject matter jurisdiction exists "only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Dickerson v. United States*, 530 U.S. 428, 439 n.3." Cruz's Ground Two and Ground Three do not make that claim and even if we granted him some kind of relief, he would not be released from custody. I recommend these claims be dismissed for lack of subject matter jurisdiction.

Even if we had jurisdiction to consider Cruz's Ground Two and Ground Three claims, the claims would have to be dismissed because they raise only noncognizable challenges to state court rulings on state law issues. In order to obtain a writ of habeas corpus, a petitioner must present a *cognizable issue*, meaning he must allege a violation of the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241. Otherwise, the federal habeas court cannot review the claim. *See Estelle*, 502 U.S. at 68. Violations of state constitutions, laws, or rules are *noncognizable*. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle*, 502 U.S. at 67). A petitioner cannot turn a state-law claim into a constitutional claim making generic allegations that the failure to follow the state rule violated his right to a "fair trial" or his "due process" rights. *See Rivera v. Illinois*, 556 U.S. 148, 158 (2009) (holding that the Due Process Clause does not require strict observance of state procedural rules). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction," binds federal habeas courts. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68). A federal

habeas court is not simply an additional venue in which to obtain review of state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

Nevertheless, a state-court ruling on a state-law issue may violate a petitioner's due process rights when it made the underlying proceeding "fundamentally unfair."  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  That is, when the state-court ruling undermined the "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling*, 493 U.S. 342, 352 (1990) (internal citations omitted) the habeas court may grant relief.  Courts have defined such violations "very narrowly."  *Id.*

Cruz's Ground Two and Ground Three claims only relate to the state courts' handling of state law issues concerning the imposition of mandatory fines and court costs.  They do not allege that Cruz is in custody in violation of the constitution or laws of the United States. They do not even allege that the imposition of a mandatory fine or court costs violates federal law in any way.  Further, we are bound to follow the conclusions of the Ohio Court of Appeals that neither the imposition of a $10,000 mandatory fine nor the after-the-fact imposition of court costs violated Ohio law or Cruz's rights.  *See State v. Cruz*, 2018-Ohio-2052 at ¶¶ 21-34; ECF Doc. 7-1 at 101-105.

In regard to the Ground Two claim challenging the imposition of a mandatory $10,000 fine, Cruz claims the trial court erred by imposing the fine without considering his ability to pay.  Cruz buttresses that claim by asserting that his attorney's failure to file an affidavit of indigency prior to sentencing amounted to ineffective assistance of counsel, because that was what freed the court from its obligation to consider Cruz's ability to pay.  ECF Doc. 1-1 at 15-

16.  Thus, Cruz's Ground Two claim is actually two sub-claims both of which relate to the imposition of the mandatory fine.

The Ohio Court of Appeals disposed of both parts of the claim.  First, it found that under Ohio Rev. Code § 2929.18(B)(1), Cruz's failure to file his affidavit of indigency freed the trial court from having to consider the issue of Cruz's ability to pay before imposing a fine.  *State v. Cruz*, 2018-Ohio-2052 at ¶ 23; ECF Doc. 7-1 at 102.  Second, in regard to Cruz's ineffective assistance sub-claim, the appellate court, again applying the correct legal standard – *Strickland* – noted that to establish prejudicial ineffective assistance of counsel, Cruz was required to demonstrate that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at ¶ 24.  The appellate court concluded that under Ohio law, the mere filing of an affidavit of indigency to qualify for the appointment of counsel does not, standing alone, also prove that a person is unable to pay a fine.  *Id.* at ¶ 28.  The appellate court then made the following factual determinations:

> {¶ 29} Moreover, the record shows that Cruz owned two automobiles and possessed $22,889 in U.S. currency when he was arrested. And Cruz informed the court that although he was represented by court appointed counsel, he attempted to retain his own personal counsel but was prohibited for some unknown reason. (Tr. 238-239.) This suggests that Cruz was not indigent.

> {¶ 30} There was no evidence that Cruz was unable to pay the fines after his release from prison. There was no evidence of any physical or mental disability that prevented him from earning the funds to pay the fine. Thus, even if his trial counsel had filed an affidavit of indigency, it is doubtful that the trial court would have waived the mandatory fine. Therefore, Cruz cannot establish a claim for ineffective assistance of counsel.

*State v. Cruz*, 2018-Ohio-2052 at ¶ 29-30; ECF Doc. 7-1 at 104.  In essence, therefore, the Ohio Court of Appeals disposed of Cruz's Ground Two claim by applying Ohio law to determine that Cruz could not demonstrate prejudice arising from his attorney's failure to file

an affidavit of indigency.  We are bound by the Ohio court determinations of Ohio law respecting whether fines may be imposed in this case.  *Bradshaw*, 546 U.S. at 76.  And Cruz has adduced no evidence to overcome the presumption of correctness that applies to the factual determinations made by the Ohio courts.

It is even more clear that Cruz's Ground Three claim only implicates Ohio law.  In this claim, Cruz contends the trial court said nothing about the imposition of court costs during his sentencing hearing but later imposed costs in its judgment entry of conviction.  Cruz contends this was error, and he again makes the sub-claim that his attorney's failure to file an affidavit of indigency is what prevented the court from waiving costs.  ECF Doc. 1-1 at 18-19.  The Ohio Court of Appeals disposed of the claim by exclusive reference to Ohio law: it noted – and the state agreed – that imposing costs in a judgement entry when no mention of costs was made at the sentencing hearing was error.  But it also held:

> {¶ 32} . . . However, in *State v. Beasley*, [153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.2d 1028 (2018)], the Ohio Supreme Court explained that under R.C. 2947.23(C), as recently amended, the trial court "'retains jurisdiction to waive, suspend, or modify the payment of costs of prosecution * * * at the time of sentencing or at any time thereafter." *Id.* at ¶ 265. Thus, the court concluded that there is no need for the appellate court to remand the case in order for a defendant to file a motion to waive costs. *Id.* at ¶ 265.

> {¶ 33} Therefore, the third assignment of error is overruled.

*State v. Cruz*, 2018-Ohio-2052 at ¶¶ 32-33; ECF Doc. 7-1 at 104-105.  We must defer to this state court interpretation of state law.  And what was that determination?  Cruz was correct that it was error for the trial court to impose costs in the first instance in the judgment entry of conviction.  And the court of appeals concluded that because Cruz could return to the trial court to seek a waiver, suspension, or modification of court costs, there was no merit to his

Ground Three claim.  This also means the Ohio Court of Appeals necessarily found no merit to Cruz's Ground Three ineffective assistance of counsel sub-claim.[9]

I recommend that Cruz's Ground Two and Three claims be dismissed on the additional basis that they assert only noncognizable issues which we may not entertain.

### 3.  Lack of Merit

Even though we lack subject matter jurisdiction to consider Cruz's Ground Two and Ground Three claims and even though those claims raise only noncognizable issues, it can readily be seen that the claims also lack merit.  Thus, should the Court disagree with my conclusions concerning subject matter jurisdiction and cognizability and prefer to address the claims on the merits, I have included the following brief analysis.

The only federal law issue embodied in the Ground Two and Ground Three claims is Cruz's assertion that he received ineffective assistance of counsel when his attorney failed to file an affidavit of indigency prior to sentencing as required by Ohio Rev. Code § 2929.18(B)(1).  It is unnecessary to repeat the full discussion of the applicable law from the merits analysis of Cruz's Ground One claim; suffice it to say, our review is confined to determining whether the Ohio courts' rulings on Cruz's Ground Two and Ground Three claims were contrary to or an unreasonable application of clearly established federal law. Alternatively, we may determine whether those rulings involved unreasonable determinations of the facts upon the record presented.

---

[9] Indeed, Cruz was aware of *and exercised* his right to return to the trial court on a court costs issue. According to the docket, on May 15, 2017 – six days after Cruz was sentenced – he filed a *pro se* motion in the trial court requesting that his court costs and fine be suspended or that a payment plan be put in place.  ECF Doc. 7-1 at 237.  The trial court denied that motion by a journal entry filed on July 5, 2017.  ECF Doc. 7-1 at 236.  Cruz filed his *pro se* notice of appeal on August 8. 2017 (ECF Doc. 7-1 at 23) but did not appeal the trial court's denial of his motion to suspend.

A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).  Cruz has not identified any United States Supreme Court precedent announcing clearly established federal law on state court fines and court costs.  So, no ruling of the Ohio courts on the issue of fines or court costs – even if deemed cognizable – could provide a basis for habeas relief.

The Ohio Court of Appeals applied *Strickland* in ruling on Cruz's Ground Two sub-claim concerning the alleged ineffective assistance of counsel that led to the imposition of a mandatory fine.  The appellate court correctly identified throughout its opinion the two parts of the *Strickland* test for deciding ineffective assistance of counsel claims: first, a person making the claim must show that the attorney's representation was deficient and hat the deficient performance prejudiced his defense.  *State v. Cruz*, 2018-Ohio-2052 at ¶¶ 18, 24; ECF Doc. 7-1 at 100, 102.  After reciting the correct law, the Ohio Court of Appeals concluded that Cruz could not show prejudice arising from his counsel's failure to file an affidavit of indigency.  The court noted that there was evidence Cruz had been in possession of cash and vehicles (which were the subject of the state's forfeiture efforts) and that there was no evidence in the record suggesting Cruz suffered from physical or mental disabilities what would have impacted his future ability to pay the fine.  *Id.* at ¶ 30.  From these, the Ohio court determined that it was doubtful the trial court would have waived the mandatory fine even if an affidavit of indigency had been filed.  *Id.*

These conclusions did not represent either an unreasonable application of *Strickland* or an unreasonable determination of the facts on the record before the court.  Though not mentioned by the Ohio Court of Appeals, I find it noteworthy – on Cruz's claim of inability to

pay – that when he was asked by the trial court during his plea colloquy whether he understood his right to an attorney (and to one who would be appointed without cost if he could not afford one), Cruz stated: "I tried but I wasn't allowed.  I have money, but I wasn't allowed -- ."  ECF Doc. 7-1 at 487-488.  Cruz appeared to be telling the trial judge he had enough money to pay for an attorney of his own choosing and had tried to hire one.  Such a statement is in conflict with a claim of an inability to pay a $10,000 fine or court costs.  Thus, we have no basis upon which to conclude that the Ohio courts made an unreasonable application of *Strickland* or an unreasonable determination of facts on the record before it.

Should the Court decide to decide Cruz's Ground Two and Ground Three claims on the merits, I recommend they be dismissed for lack of merit.

## V.      Recommendation Regarding Certificate of Appealability

### A.      Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

**B.     Analysis**

When a petition is to be dismissed in whole or part on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts my recommendations, Cruz will not be able to show that the Court's rulings on his Ground Two and Ground Three claims are debatable among jurists of reason.  Thus, I recommend that a certificate of appealability not be issued on those claims.  However, as discussed above, jurists of reason could debate the Court's conclusion that the Ohio Court of Appeals was correct in finding that Cruz failed to demonstrate that he was prejudiced by his attorney's faulty advice concerning judicial release eligibility.  I recommend Cruz be granted a certificate of appealability on this discrete issue.

**VI.     Recommendations**

Because Cruz's Ground One claim lacks merit and because we have no subject matter jurisdiction to decide Cruz's noncognizable, meritless Ground Two and Ground Three claims, I recommend each of his claims be DISMISSED and that his petition for writ of habeas corpus

be DENIED.  I further recommend Cruz be granted a certificate of appealability solely on his

Ground One claim.


Dated: May 21, 2020

Thomas M. Parker

United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.
See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140
(1985), reh'g denied, 474 U.S. 1111 (1986).